**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1532-18T1

NATIONSTAR MORTGAGE,
LLC, d/b/a MR. COOPER,

      Plaintiff-Respondent,

v.

ATHENA KOSTOPOULOS
and THOMAS KOSTOPOULOS,
wife and husband,

      Defendants-Appellants,

and

WESTLAND GARDEN STATE
PLAZA, PALISADES COLLECTION,
LLC, and THE STATE OF NEW
JERSEY,

      Defendants.

_____

      Argued September 9, 2019 - Decided September 20, 2019

      Before Judges Sabatino and Natali.

On appeal from the Superior Court of New Jersey, Chancery Division, Bergen County, Docket No. F-002238-15.

Haralampo Kasolas argued the cause for appellants (Brach Eichler LLC, attorneys; Haralampo Kasolas, of counsel and on the briefs).

Michael T. Madaio argued the cause for respondent (Sandelands Eyet LLP, attorneys; Michael T. Madaio, of counsel and on the brief).

PER CURIAM

In this residential foreclosure case, Athena and Thomas Kostopoulos (collectively "defendants")[1] raise several arguments challenging the entry of final judgment in foreclosure against them, an earlier grant of summary judgment, and other orders by the trial court.

Defendants defaulted on their mortgage loan in July 2006, and have not made any payments since then. Their primary arguments are that the original plaintiff in this case, Wilmington Trust Company ("Wilmington"), did not have standing to bring a foreclosure action against them, and they were not properly served with notice of the motion for final judgment. For the reasons that follow,

---

[1] The foreclosure complaint lists other defendants, but they have not participated in this appeal.

A-1532-18T1

we conclude these arguments and the other points raised by defendants lack merit, and accordingly affirm.

I.

We recite the background in considerable detail, in light of defendants' primary challenges to plaintiff's standing and related chain-of-custody issues.

The Transactions

On September 16, 2003, defendant Athena Kostopoulos executed a note promising to pay $564,000 on a residential mortgage loan at a 6% yearly interest rate to Lehman Brothers Bank FSB, with a maturity date of October 1, 2033. That same day, Athena and Thomas Kostopoulos executed a mortgage to Mortgage Electronic Registration Systems Inc. ("MERS") as nominee for Lehman Brothers Bank, FSB, covering the subject premises in Paramus. The mortgage was recorded with the Bergen County Clerk's Office on October 10, 2003. The note was subsequently indorsed from Lehman Brothers Bank, FSB to Lehman Brothers Holdings, Inc. ("LBHI"). The instrument was endorsed "in blank," pursuant to N.J.S.A. 12A:3-205, making it payable to a bearer and negotiable by transfer of possession alone.

A series of related transactions then occurred on November 1, 2003. Lehman Brothers Bank, FSB assigned all of its rights, title and interest in a set

of bank mortgage loans, which plaintiff asserts included defendants' loan, to LBHI. That same day, LBHI entered into a Mortgage Loan Sale and Assignment Agreement conveying the loans to Structured Asset Securities Corporation ("SASC") on a "servicing-retained basis." SASC, in turn, conveyed the mortgage loans to Citibank, N.A. ("Citibank") as trustee, under a Trust Agreement. LBHI entered into a servicing agreement with Aurora Loan Services, Inc. ("Aurora"), whereby Aurora became servicer of the mortgage loans. Aurora was also what is known in the trade as a "master servicer" of the loans under the Trust Agreement.

Consequently, as of November 1, 2003, Aurora became the servicer and master servicer for the Series 2003-35 loans. LBHI owned the servicing rights, SASC owned the loans, and Citibank was trustee for SASC.

On July 1, 2004, CitiMortgage became both owner of the servicing rights to the loans within the Series 2003-35 certificates and servicer of the loans, pursuant to a Servicing and Servicing Rights Assignment and Assumption Agreement between LBHI and CitiMortgage dated June 30, 2004. This contractual agreement was also evidenced by a letter sent to defendants, informing them that CitiMortgage would be their servicer effective July 1, 2004.

A-1532-18T1

According to a Trustee's Certificate, as of July 1, 2004, Wilmington served as Trustee for, among other agreements, the November 1, 2003 Trust Agreement relating to the Series 2003-35 certificates. The certificate is dated November 4, 2015. It is signed by a Vice President of Wilmington, and acknowledged and agreed to by a Vice President of Citibank as predecessor trustee.

The record further shows that on March 6, 2012, Aurora and Nationstar entered into a Residential Servicing Asset Purchase Agreement, whereby Nationstar purchased Aurora's rights, title, and interest in a set of assets, including Aurora's interest in the November 1, 2001 Trust Agreement and Servicing Agreement regarding the Series 2003-35 certificates.

The Assignments

On December 21, 2010, MERS, as nominee for Lehman Brothers Bank FSB, assigned the mortgage to CitiMortgage. This assignment was recorded with the Bergen County Clerk's Office on January 10, 2011.

Given the assignment of the servicing rights under the Servicing Agreement to CitiMortgage, Aurora's remaining interest in the Servicing Agreement and Trust Agreement would solely be its role as "master servicer." Therefore, Nationstar, having purchased this interest, was the master servicer

A-1532-18T1

for the Series 2003-35 certificates pool. That is consistent with a February 24, 2016 Securities and Exchange Commission ("SEC") filing by CitiMortgage entitled "Management Assessment of Compliance with Applicable Servicing Criteria," which lists Nationstar as master servicer, and the entity to which CitiMortgage is reporting to as servicer for the loans in the Series 2003-35 certificates.

On February 28, 2014, CitiMortgage assigned the mortgage to Wilmington as trustee for the trust. The assignment was recorded on March 14, 2014. No other assignments were made until after the trial court in this case granted Wilmington's summary judgment motion.

On August 7, 2017, CitiMortgage executed an assignment of the mortgage to Nationstar. This assignment was recorded on August 21, 2017.[2]

On August 21, 2017, Wilmington assigned the mortgage to Nationstar, and that assignment was recorded on September 14, 2017. Plaintiff's counsel later filed a certification to the court explaining that this August 7 assignment from CitiMortgage to Nationstar "has no bearing on the chain of title." On October 16, 2017, the trial court granted Wilmington's motion to substitute Nationstar as plaintiff in this action.

---

[2] We discuss this particular document, infra, in Part II.

A-1532-18T1

<u>Note Possession</u>

According to a certification by a CitiMortgage employee, CitiMortgage came into possession of the original note on or about November 12, 2013. The certification includes a printout of the location history, which supports the certification. CitiMortgage then maintained possession of this note until on or about April 21, 2015, when it was sent to the foreclosure counsel of record, which is evidenced by an April 29, 2015 Bailee Agreement.

<u>The Foreclosure Action and Motion Practice</u>

Defendants defaulted on their loan on July 1, 2006 by failing to make timely payments. As we have already noted, defendants have not made any payments in the ensuing thirteen years since this default.

In January 2015, Wilmington filed a complaint in foreclosure against Athena and Thomas Kostopoulos, and other parties. Defendants submitted a pro se answer and counterclaim for declaratory judgment, consumer fraud in violation of N.J.S.A. 56:8-1, and violation of the Fair Foreclosure Act, N.J.S.A. 2A:50-53 to -73.

On August 17, 2015, Wilmington moved for summary judgment, to strike defendant's answer, to dismiss defendants' counterclaims, to enter default judgment against defendants, and to return the case to the Office of Foreclosure

7

to proceed uncontested. On October 26, 2015, defendants – by this point represented by counsel – cross-moved for summary judgment. The court heard oral argument on these motions on December 8, 2015.

On December 10, 2015, Judge Gerald C. Escala issued an order and written opinion granting summary judgment in favor of Wilmington, striking defendants' answer, instructing the clerk to enter default against defendants as though no answering pleading had been filed, dismissing defendants' counterclaims, returning the matter to the Office of Foreclosure to proceed as an uncontested matter, and denying defendants' claim for a commission.

After it was substituted as the plaintiff, Nationstar moved for final judgment on May 21, 2018. A legal assistant with plaintiff's law firm certified that the office mailed a copy of the notice of this motion to defendants and their attorney, as well as the other defendants named in the complaint, on May 1, 2018. The notice in the record stated in all capital letters "if you want to object to the calculation of amount due, you must do so in writing within 10 days after the day you received this motion."

Defendants' attorney subsequently tendered a certification and supporting documentation purporting to show that defendants were not notified through the "eCourts" system of plaintiff's motion for final judgment. The submission

A-1532-18T1

included a printout showing that defendants and their attorney were not sent electronic notice of the filling, and an email from June 27, 2018 that eCourts was having noticing issues.

Judge Edward A. Jerejian granted final judgment in foreclosure to Nationstar on June 22, 2018. The judgment recited that Nationstar is entitled to recover from defendants "$1,063,755.67 together with interest at the Contract rate of 6% on $681,931.44 being the principal sum in default including advances from February 8, 2018 to June 22, 2018 and lawful interest thereafter on the total sum due to plaintiff together with costs of this suit to be taxed including counsel fee of $7,500 raised and paid in the first place out of the mortgaged premises." The judgment directed that the mortgaged property be sold to raise and satisfy the amounts due.

Defendants moved to vacate the final judgment. They also sought (1) vacate Judge Escala's earlier December 10, 2015 order granting, among other things, summary judgment to plaintiffs; (2) vacate the order substituting Nationstar as plaintiff; and (3) dismiss the foreclosure complaint for lack of standing and perpetrating fraud on the court.

After hearing oral argument, Judge James J. DeLuca issued orders on November 7, 2018, denying relief to defendants. The orders were accompanied

9

by lengthy written riders, explaining the court's reasons for its rulings. The present appeal ensued.

## II.

On appeal, defendants present a host of arguments, including: (1) summary judgment was improper because of contested issues of fact; (2) Wilmington lacked standing to bring the foreclosure action because it was not the trustee of the Series 2003-35 certificates and Nationstar already controlled the underlying debt; (3) defendants' motion to vacate should have been granted because two separate entities were attempting to service the loan; (4) the electronic notification of plaintiffs' motion for judgment failed and thus service of the motion was inadequate; and (5) this court's opinion in Residential Mortgage Loan Trust 2013-TT2 by U.S. Bank National Association v. Morgan Stanley Capital, Inc., 457 N.J. Super. 237 (App. Div. 2018), requires reversal of the final judgment because necessary parties have not been noticed.

Having considered these contentions, we affirm the court's rulings, substantially for the sound reasons expressed by Judges Escala and DeLuca. We amplify those rulings with only a few comments.

A lender's right to foreclose is an equitable right inherent in a mortgage, triggered by a borrower's failure to comply with the terms and conditions of the

associated loan.  S.D. Walker, Inc. v. Brigantine Beach Hotel Corp., 44 N.J. Super. 193 (Ch. Div. 1957).  To obtain relief in a mortgage foreclosure action, the mortgagee (or its successor in interest) must establish that: (1) the mortgage and loan documents are valid; (2) the mortgage loan is in default; and (3) it has a contractual right to foreclose in light of the default.  See, e.g., Great Falls Bank v. Pardo, 263 N.J. Super. 388, 394 (Ch. Div. 1993), aff'd, 273 N.J. Super. 542 (App. Div. 1994); Somerset Trust Co. v. Sternberg, 238 N.J. Super. 279, 283-84 (Ch. Div. 1989).

Generally, "a party seeking to foreclose a mortgage must own or control the underlying debt."  Wells Fargo Bank, N.A. v. Ford, 418 N.J. Super. 592, 597 (App. Div. 2011) (quoting Bank of N.Y. v. Raftogianis, 418 N.J. Super. 323, 327-28 (Ch. Div. 2010)).  "In the absence of a showing of such ownership or control, the plaintiff lacks standing to proceed with the foreclosure action and the complaint must be dismissed."  Ibid.  See also Deutsche Bank Trust Co. Americas v. Angeles, 428 N.J. Super. 315 (App. Div. 2012); Deutsche Bank Nat'l Trust Co. v. Mitchell, 422 N.J. Super. 214, 216 (App. Div. 2011).

In the present case, we are satisfied that plaintiff Nationstar had standing to obtain final judgment against defendants.  We reach that conclusion

11

essentially for the reasons articulated by the trial court which need not be repeated here.

Our only comment regarding standing concerns the August 7, 2017 assignment of the mortgage from CitiMortgage to Nationstar. As plaintiff's counsel has acknowledged, that particular document was issued in error. CitiMortgage had already assigned the mortgage to Wilmington in February 2014. This interim error was soon cured, however, two weeks later on August 21, when Wilmington assigned the mortgage to Nationstar. Regardless of the error, both instruments ultimately directed the assignment to the same assignee: Nationstar. Moreover, Nationstar was duly substituted as plaintiff in this case before final judgment was entered in its favor. We agree with the trial court that, under the circumstances, the erroneous August 7 assignment document was of no moment.

Our only other comment concerns defendants' reliance upon Residential Mortgage, 457 N.J. Super. at 237. That case involved a distinguishable situation in which there had been multiple foreclosure actions brought by different entities against the defendants. Id. at 241. Eventually a putative assignee filed a quiet title action to establish its rights as the holder of the mortgage and note. Ibid. We recognized in that case, as did the trial court, that there was some

contradictory evidence regarding the chain of title. Id. at 247. Nevertheless, we upheld summary judgment for the plaintiff because the defendants "did not produce any legally competent evidence that any entity, other than those named as defendants in the complaint, [had] an interest in the note and mortgage." Ibid. The defendants did not produce "evidence that they made mortgage payments to any banks or mortgage companies other than the original mortgagee." Id. at 247-48. Consequently, we found that the plaintiff had established "at least a colorable claim of ownership of the mortgage and note," and "no purpose would be served by remanding [the] case for further proceedings." Id. at 248.

The same is true here. Despite the apparent glitch of the August 7 assignment and other irregularities in the chain of title alleged by defendants, no creditor other than Nationstar has materialized to assert a claim to payment on the mortgage. Although we do not encourage sloppy practices by mortgagees and those who process foreclosure actions, Nationstar's entitlement to foreclose is sufficiently clear to uphold the final judgment. Moreover, there is no equitable basis to set aside this mortgage that has been in default for well over a decade.

A-1532-18T1

To the extent defendants have raised other points we have not yet mentioned, they lack sufficient merit to warrant discussion in this opinion.  <u>R.</u> 2:11-3(e)(1)(E).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION